FILED
COURT OF APPEALS
DIVISION II

2013 APR -9 AM 9: 03

STATE OF WASHINGTON

BY_____
            DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42661-7-II |
| Respondent and Cross Appellant, | |
| v. | |
| CHANNING WARREN DAVIS, | UNPUBLISHED OPINION |
| Appellant and Cross Respondent. | |

QUINN-BRINTNALL, J. — A jury found Channing W. Davis guilty of second degree assault after Davis got into a fight with Keenan Ekregren[1] while they were both incarcerated in the Forks City Jail. Davis appeals, arguing that (1) the prosecutor committed misconduct during closing argument, (2) the trial court erred by allowing Davis to be restrained by a leg band during trial, and (3) there was insufficient evidence to support the jury's verdict. The State cross appeals the trial court's refusal to give the State's proposed jury instruction on the definition of disfigurement. We decline to address the State's cross appeal because it is moot and any decision would be purely advisory, but we affirm Davis's conviction in all respects.

---

[1] The victim's last name is spelled "Ekegren" in the information, the judgment and sentence, and the State's brief. His last name is spelled "Ekregren" in the trial transcripts and Davis's briefing. We will use "Ekregren" in this opinion.

FACTS

On June 5, 2011, Davis was in custody at the Forks City Jail. At approximately 10:15 AM, Davis told Corrections Officer Lex Prose that he had been in a fight with another inmate. Prose ordered a "lock down" and located the victim, Ekregren, in his cell. Prose observed that Ekregren had swelling in his face and blood in his mouth. Prose also noticed blood smeared on the floor. Ekregren was transported to the emergency room. Ekregren was diagnosed with a concussion and "obvious contusions of the face and head, and orbital region, around the eyes." Report of Proceedings (RP) (Sept. 12, 2011) at 42.

On June 20, 2011, the State charged Davis with one count of second degree assault. RCW 9A.36.021(1)(a). A jury trial was held on September 12 and 13, during which Davis was in custody and wore a "stiff leg" restraint at trial. Ekregren did not testify at trial. The State introduced photos showing Ekregren's eye swollen shut, bruises and abrasions on Ekregren's face and ear, and blood in Ekregren's mouth. Sean Riley, another inmate at the jail on June 5, 2011, testified that he saw "[Ekregren] laying down and [Davis] was over top of him choking him." RP (Sept. 13, 2011) at 8. Riley later clarified that Davis actually had Ekregren in a headlock. Officer Prose and Dr. William Washington, the emergency room physician, also testified.

Davis alleged self-defense and testified at trial. According to Davis, he went to Ekregren's cell to ask him about an incident involving a theft at Davis's father's house about two years earlier. When Davis arrived at Ekregren's cell, Ekregren "started swinging." RP (Sept. 13, 2011) at 24. After Ekregren threw the first punch, Davis "half blocked, half dodged it," then they both started fighting. RP (Sept. 13, 2011) at 24. Ultimately, Davis placed Ekregren in a headlock to end the fight.

2

No. 42661-7-II

The trial court instructed the jury on the lawful use of force for assault as well as the lesser included offense of fourth degree assault. The trial court refused to give the State's proposed instruction on the definition of disfigurement. The jury found Davis guilty of second degree assault. The trial court sentenced Davis to 18 months confinement and 18 months community custody. Davis appeals; the State cross appeals.

ANALYSIS

PROSECUTORIAL MISCONDUCT

Davis argues that the State engaged in misconduct during closing arguments by improperly expressing personal opinions on Davis's guilt. Davis alleges that the State's use of the "personal pronoun 'I' approximately 60 times" during closing argument constituted misconduct. Br. of Appellant at 9. At the beginning of closing arguments, the prosecutor stated,

> I'd ask you for one thing when you deliberate, and that is please don't make my job any harder than it is. My job as a representative of the people of the State of Washington is to prove this case beyond a reasonable doubt. I'd argue to you that I've done that, but I'd point out to you that as we discussed in jury selection it's not proof beyond . . . any doubt.

RP (Sept. 13, 2011) at 55. The prosecutor also used the phrases "I'd argue" or "I would argue" at various other points throughout his closing argument. Davis did not object to the prosecutor's use of the pronoun "I" during closing argument.

A defendant claiming prosecutorial misconduct "'bears the burden of establishing the impropriety of the prosecuting attorney's comments and their prejudicial effect.'" *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006) (quoting *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997), *cert. denied*, 523 U.S. 1007 (1998)). Comments are deemed prejudicial only where there is a substantial likelihood that they affected the verdict. *McKenzie*, 157 Wn.2d at 52. "A prosecuting attorney's allegedly improper remarks must be reviewed in the

3

context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury." *Brown*, 132 Wn.2d at 561. When the defense fails to object to an improper argument, the error is considered waived "unless the comment is so flagrant and ill-intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by a curative instruction to the jury." *Brown*, 132 Wn.2d at 561.

Here, the prosecutor used the phrases "I'd argue" or "I would argue," clearly identifying that the statements were arguments. The jury was instructed that

> [t]he lawyers' remarks, statements, and arguments are intended to help you understand the evidence and apply the law. It is important, however, for you to remember that the lawyers' statements are not evidence. The evidence is the testimony and the exhibits. The law is contained in my instructions to you. You must disregard any remark, statement, or argument that is not supported by the evidence or the law in my instructions.

Clerk's Papers at 26. We presume that the jury follows that trial court's instructions. *State v. Grisby*, 97 Wn.2d 493, 499, 647 P.2d 6 (1982), *cert. denied*, 459 U.S. 1211 (1983). Therefore, we presume that the jury disregarded any argument that was not supported by the evidence or the law. Furthermore, any impropriety could easily have been cured by an objection and an admonishment to the jury. *See, e.g., State v. Emery*, 174 Wn.2d 741, 763-64, 278 P.3d 653 (2012) (holding that prosecutor's improper statements could have been cured by an objection and proper instruction, therefore the defendant's prosecutorial misconduct claim fails). The State's first person remarks were sloppy practice but they were not prejudicial given the jury instructions and any potential prejudice could have been cured by a timely objection. Accordingly, Davis's prosecutorial misconduct claim fails.

No. 42661-7-II

RESTRAINTS

Next, Davis argues that the trial court erred by allowing Davis to be restrained during trial without making a finding of "impelling necessity." While Davis is correct that the trial court erred by not making specific findings on the record that the restraints used were necessary, he cannot demonstrate any prejudice resulting from the restraint. Therefore, the error is harmless.

During trial, Davis was restrained with a "stiff leg" or leg brace. The trial court outlined the procedure that it would use to ensure that the jury would not know that Davis was restrained:

> Mr. Davis, I just want to talk to you a little bit. We try to make it appear to the jury that you're not in custody. They don't know whether the guards here just normally or not here normally. So, what I want you to do is not leave the courtroom even when we have a recess until I say for you to leave, so the jury won't see you leaving with the officer, okay?
>
> . . . .
>
> . . . Okay. And you've got something on your leg as well. Um, if you do testify -- intend to testify, then what I'm going to do is send the jury out while you get on the witness stand so they don't see you got a stiff leg on or suspect that at all.
>
> So if you have any questions about that ask [defense counsel], but just kind of stay here so we can not let the jury see you're going out the back door here, okay.

RP (Sept. 12, 2011) at 5-6. There is no indication in the record that this procedure was not followed and there is no indication that the jury ever saw or was aware of a restraining brace.

Davis argues that being restrained during trial without the trial court making specific findings of necessity is presumed prejudicial and requires reversal. But Davis is mistaken. "A jury's brief or inadvertent glimpse of a defendant in restraints inside or outside the courtroom does not necessarily constitute reversible error. Such circumstances are not inherently or presumptively prejudicial and do not rise to the level of a due process violation absent a showing of actual prejudice." *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 697-98, 101 P.3d 1 (2004).

5

In *State v. Clark*, 143 Wn.2d 731, 777, 24 P.3d 1006, *cert. denied*, 534 U.S. 1000 (2001), our Supreme Court held that the defendant was not prejudiced by being restrained during the penalty phase of his death penalty trial because the trial court took steps to ensure that the jury did not see the defendant restrained.

Here, Davis cannot show any prejudice related to his restraint during trial. The trial court implemented procedures to ensure that the jury was not aware that Davis was restrained or in custody and there is no indication that these procedures were not followed. Without demonstrating that the jury saw the restraints, Davis cannot establish any prejudice. In addition, because Davis was charged with having committed an assault while incarcerated in the jail, the jury was necessarily aware that Davis's liberty was restricted to some degree. Accordingly, the trial court's failure to make an explicit finding of "impelling necessity" is not reversible error.

SUFFICIENCY OF THE EVIDENCE

Finally, Davis argues that insufficient evidence supports the jury's verdict finding him guilty of second degree assault. Specifically, Davis argues that the evidence was insufficient to allow a reasonable jury to find that Davis inflicted substantial bodily harm on Ekregren. Here, the evidence of Ekregren's injuries was sufficient to support the jury's guilty verdict and Davis's sufficiency of the evidence claim fails.

Evidence is sufficient if when viewed in a light most favorable to the jury's verdict, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. Circumstantial and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). Our role is not to reweigh the

evidence and substitute our judgment for that of the jury. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). Instead, because they observed the witnesses testify first hand, we defer to the jury's resolution of conflicting testimony, evaluation of witness credibility, and decisions regarding the persuasiveness and the appropriate weight to be given the evidence. *See State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533, *review denied*, 119 Wn.2d 1011 (1992).

Under RCW 9A.36.021(1)(a), a person is guilty of second degree assault if he or she assaults another and recklessly inflicts substantial bodily harm. "Substantial bodily harm" is "bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part." RCW 9A.04.110(4)(b).

Davis does not deny fighting with Ekregren. Instead, he challenges only the sufficiency of the evidence proving he inflicted substantial bodily harm. The evidence, when taken in the light most favorable to the jury's verdict, proves that Ekregren suffered a concussion that caused him to have trouble walking. Ekregren also sustained injuries to his face and mouth which resulted in difficulty speaking. Finally, Ekregren had bruising to his face which resulted in his eye being swollen shut. "The presence of the bruise marks indicates temporary but substantial disfigurement." *State v. Ashcraft*, 71 Wn. App. 444, 455, 859 P.2d 60 (1993); *see also State v. McKague*, 172 Wn.2d 802, 806-07, 262 P.3d 1225 (2011) (bruising from being punched in the face and thrown on the ground constituted substantial but temporary disfigurement). A concussion that interferes with the victim's ability to stand or walk is sufficient to support a finding that the victim suffered a temporary but substantial impairment of a body part or an organ's function. *McKague*, 172 Wn.2d at 807. Accordingly, there was sufficient evidence to support the jury's verdict finding Davis guilty of second degree assault.

No. 42661-7-II

STATE'S PROPOSED JURY INSTRUCTION

The State cross appeals, arguing that the trial court erred when it refused to give the State's proposed jury instruction on the definition of disfigurement. Because we affirm Davis's conviction, the State's cross appeal is moot. *State v. Ross*, 152 Wn.2d 220, 228, 95 P.3d 1225 (2004) (case becomes moot when the court can no longer provide effective relief). Any opinion would be purely advisory and we do not issue advisory opinions. *Commonwealth Ins. Co. of Am. v. Grays Harbor County*, 120 Wn. App. 232, 245, 84 P.3d 304 (2004) (citing *Wash. Beauty Coll., Inc. v. Huse*, 195 Wash. 160, 164, 80 P.2d 403 (1938)).

The State did not commit prosecutorial misconduct during closing argument. Although the trial court erred by failing to make a finding on the record that Davis's restraints were justified by "impelling necessity," the error was harmless. And sufficient evidence supports the jury's guilty verdict. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

_____
QUINN-BRINTNALL, J.

We concur:

_____
JOHANSON, A.C.J.

_____
BJORGEN, J.

8